IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SANJUANITA CASTILLO,<br>　　PLAINTIFF, | §<br>§<br>§ |
| VS. | § CIVIL ACTION NO. § 4:15-CV-728-A |
| | §<br>§ |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br>　　DEFENDANT. | §<br>§<br>§<br>§ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I. STATEMENT OF THE CASE**

Plaintiff Sanjuanita Castillo ("Castillo") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"). Castillo applied for DIB in December 2012, alleging that her disability began on October 16, 2012. (Transcript ("Tr.") 18, 147-150.) Her application for benefits was denied initially and on reconsideration. (Tr. 18, 53, 63-73.) Castillo then requested a hearing before an administrative law judge ("ALJ"). (Tr. 18, 81-82.) The ALJ held a hearing on May 14, 2014, and issued an unfavorable decision on August 7, 2014. (Tr. 12-44.) On August 5, 2015, the Appeals Council denied

Castillo's request for review, leaving the ALJ's decision as the final decision of the Commissioner in her case. (Tr. 1-5.) Castillo subsequently filed this civil action seeking review of the ALJ's decision.

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520.

First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional

capacity ("RFC"), age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show she is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III. ISSUES

In her brief, Castillo presents the following issue: Whether the ALJ's residual functional capacity ("RFC") decision is supported by substantial evidence. (Plaintiff's Brief ("Pl.'s Br.") at 1, 3-6.)

## IV. ALJ DECISION

In his August 7, 2014 decision, the ALJ performed the five-step sequential evaluation process for determining whether a person is disabled. (Tr. 18-25.) The ALJ first found that Castillo met the insured status requirements of the SSA through December 31, 2017. (Tr. 20.) He next held that Castillo had not engaged in any substantial gainful activity since October 16, 2012, the alleged onset date of Castillo's disability. (Tr. 20.) The ALJ further found that Castillo suffered from the following severe impairments: "degenerative joint disease of the left shoulder, knees, and hands and hypothyroidism." (Tr. 20.)

Next, the ALJ held that Castillo did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the Listing. (Tr. 20.) As to Castillo's RFC, the ALJ determined that Castillo could perform "light work"[1] as defined in 20 C.F.R. § 404.1567(b), but with some limitations. (Tr. 20.) These limitations dictate as follows:

> [T]he claimant can never kneel, crouch, crawl, or climb ladders, ropes or scaffolds. She can occasionally balance and stoop; can reach overhead frequently with the left upper extremity; and can frequently handle and finger with the bilateral upper extremities. In addition, the claimant can only perform work that does not require reading or writing in the English language.

(Tr. 21 (emphasis omitted).) Based on the RFC assessment the testimony of the vocational expert, the ALJ opined that Castillo was "capable of performing past relevant work as a fruit

---

[1] Pursuant to the regulations, light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

cutter." (Tr. 24-25 (emphasis omitted).) Consequently, the ALJ concluded that Castillo was not disabled. (Tr. 25.)

## V. DISCUSSION

### A. <u>RFC Determination and Substantial Evidence</u>

In her brief, Castillo argues that substantial evidence in the record as a whole does not support the ALJ's RFC determination. (Pl.'s Br. at 3-6.) Castillo argues that the ALJ "failed to fully address Plaintiff's lifting, carrying, standing, and walking abilities." Castillo claims that, consequently, "(t)he record supports that the Plaintiff cannot perform lifting/carrying twenty pounds occasionally and up to ten pounds frequently, and six hours of standing and/or walking in an eight-hour day as required by light work." (Pl.'s Br. at 4.) Castillo testified that "she cannot work due to pain in her knees, ankle, shoulder, arms and hands." (Pl.'s Br. at 4.) Castillo claims that the evidence in the record shows the following: (1) she cannot "lift heavy with her left arm [sic], that even just raising her arm hurts;" (2) she experiences hand pain and numbness; and (3) she cannot stand or walk for extended periods of time. (Pl.'s Br. at 4-5.) In addition, Castillo states that there is evidence in the record that indicates she often drops objects if they are too heavy due to the pain in her hands and that, due to pain in her knees, she has fallen and cannot sit, stand, or walk for extended periods of time. (Pl.'s Br. at 5.) Moreover, Castillo argues that the evidence shows she suffers from joint pain in her hand and knees and has been diagnosed with degenerative joint disease of multiple joints, knees, and arthritis. (Pl.'s Br. at 5.)

RFC is what an individual can still do despite his limitations.[2] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see*

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

*Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. SSR 96-8p, 1996 WL 374184, at *5. The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did

---

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as fact finder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

In this case, as stated above, the ALJ found that Castillo had the physical RFC to perform light work except that she could never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. (Tr. 21.) Additionally, the ALJ determined that the claimant can "occasionally balance and stoop; can reach overhead frequently with the left upper extremity; and can frequently handle and finger with the bilateral upper extremities." (Tr. 21.) In making such a determination, the ALJ considered, *inter alia*, the objective medical evidence in the record as well as Castillo's own testimony. (Tr. 21-22.)

To begin with, the ALJ noted, *inter alia*, that June 2013 examination records indicated that Castillo's arthritis of multiple joints and her symptoms were controlled. (Tr. 22; *see* Tr. 237-38.) In addition, the ALJ considered a February 2013 consultative examination in which Joseph Obeng, M.D. ("Dr. Obeng") assessed Castillo with degenerative joint disease involving the knee joints but found that an examination of the knees revealed only very mild inflammation. (Tr. 22; *see* Tr. 250.) Dr. Obeng noted that, while crepitus was present in both knees and flexion and extension of the knees was possible but limited by pain, there were no obvious signs of fluid effusion. (Tr. 22; *see* Tr. 250.) In addition, Dr. Obeng found that Castillo's patellar and ankle reflexes were normal, gait was within normal limits with no limitations and heel-to-toe tandem walking was also within normal limits. (Tr. 22; *see* Tr. 250.) Furthermore, Dr. Obeng found that Castillo had no significant back spasm, hypertrophy, or atrophy and x-rays revealed that Castillo's right knee had no dislocation, fracture, or soft tissue swelling. (Tr. 22; *see* Tr. 247, 250.)

In addition, the ALJ considered examination notes dated in April 2013 in which Castillo complained of bilateral hand pain but denied weakness, numbness, and stiffness. (Tr. 22; *see* Tr. 255.) On examination, Nabila Shoeb Zaidi , M.D. ("Dr. Zaidi") noted that Castillo exhibited normal range of motion with no edema or tenderness and prescribed pain medications. (Tr. 22; *see* Tr. 256-57.)

When Castillo returned for a follow-up visit in May 2013, she reported that her previous symptoms were well-controlled with treatment. (Tr. 22; *see* Tr. 276.) In addition, x-rays "revealed only mild arthritic joint narrowing of the left third digit; however, the right hand was normal and no acute wrist bony abnormality was noted." (Tr. 22; *see* Tr. 277.)

The ALJ also reviewed examination notes dated in August 2013 in which Castillo complained of shoulder and neck pain but denied any injury, weakness or numbness. (Tr. 22; *see* Tr. 285.) During the examination, Dr. Laine F. Foran, D.O. ("Dr. Foran") found that Castillo's "left upper back was slightly tender to palpation and there was pain to the AC joint when the arm was raised." (Tr. 22; *see* Tr. 286.) However, Dr. Foran found no deformity, swelling, or erythema. (Tr. 22; *see* Tr. 286.) In addition, the ALJ noted that x-rays of Castillo's cervical spine performed in September 2013 showed normal alignment and body height, unremarkable soft tissues, and only minimal degenerative changes at facet joints. (Tr. 22; *see* Tr. 297.)

While Castillo "continued to complain of shoulder pain around the AC joint with symptoms that were exacerbated with repetitive movements and overhead movements," examination notes from November 2013 found "no swelling, effusion, crepitus, or spasm with normal range of motion and strength." (Tr. 22-23; *see* Tr.290-91.) Further, x-rays dated January 2014 "revealed degenerative changes and irregularities in the glenoid but good joint space at the

GH joint" and Castillo was "assessed with left subacromial impingement, acromioclavicular joint arthritis, and glenohumeral arthritis and underwent a steroid injection." (Tr. 23; *see* Tr. 294.)

In a follow-up appointment in February 2014, Castillo reported that her shoulder pain was improved, and she was instructed to continue taking Tramadol as needed for pain. (Tr. 23; *see* Tr. 296.) The ALJ further noted that, in April 2014, Castillo "was seen in a physical therapy evaluation for her complaints of left shoulder pain," where she reported that she "received good relief of her pain from the previous injection but reported some difficulty with overhead and behind-the-back activities of daily living." (Tr. 23; *see* Tr. 310.) The examination revealed that she "had full passive range of motion with tightness and tenderness to palpation," and she was advised to begin a four to six week physical therapy program to improve flexibility and strength and to decrease pain. (Tr. 23; *see* Tr. 310.) After five sessions of physical therapy, Castillo was found to have improved range of motion and strength with some decrease in pain. (Tr. 23; *see* Tr. 327.) The ALJ further stated that physical notes from May 2014 indicated that the "condition of her shoulder was assessed as 'good' and, while she continued to report pain with overhead activities, she also reported that it did not limit her daily activities." (Tr. 23; *see* Tr. 336.)

The ALJ also gave "significant weight" to the opinions of the State Agency Medical Consultants ("SAMCs"). (Tr. 23.) In a Residual Functional Capacity Assessment ("RFCA") dated March 22, 2013, SAMC Kim Rowlands, M.D. ("SAMC Rowlands"), opined that Castillo: (1) could lift and/or carry up to twenty pounds occasionally and ten pounds frequently; (2) could sit, stand, and/or walk about six hours in an eight-hour workday; and (3) had the unlimited ability to lift and/or carry. (Tr.45-52.) In an RFCA dated June 3, 2013, SAMC Frederick Cremona, M.D., opined the same thing as SAMC Rowlands. (Tr. 54-62.)

In making his RFC determination, the ALJ stated:

> The physicians with Disability Determination Services are trained health professionals and are familiar with the social security administrative disability process. Moreover, the State Agency opinions are generally consistent with the residual functional capacity contained herein. The examiners had the opportunity to review the longitudinal medical file, thus the opinions are supported by the objective medical findings and are consistent with the substantial evidence of record, including the relatively limited treatment record discussed herein, and the findings of the consultative examination where only mild inflammation was noted about the bilateral knees. However, based on evidence obtained at the hearing level from JPS (7F-9F), documenting ongoing pain complaints, including the need for physical therapy for the left shoulder, the undersigned has afforded some benefit of the doubt to the claimant and added postural and manipulative limitations to fully account for the claimant's symptoms and limitations to the extent they are credible and medically supported.
>
> . . . .
>
> In particular the undersigned reiterates the following: The claimant has limited treatment notes and the physical consultative examination all point to a limited light RFC with, for example, joint knee inflammation found on exam to be "very mild" and treated conservatively. While the claimant does experience some levels of pain, the evidence indicates she still can perform the exertional requirements of light work. . . . In addition, it is noteworthy that when asked why she stopped working, the claimant mentioned that there "was a meeting" and she was going to have to start working 10 to 11 hours per day and that she could not do that; thus, the circumstance surrounding the termination of her last job do not indicate that she was incapable of performing an 8 hour workday. In addition, the claimant testified that she can indeed stand for one time for three hours, has hand numbness primarily at night, and can reach out in front without difficulty.[4]
>
> Based on the entire record, including the testimony of the claimant, the undersigned concludes that the evidence fails to support the claimant's assertions of total disability. Despite the evidence demonstrating that the claimant has suffered from medically determinable "severe" impairments, the evidence also establishes that the claimant retains the capacity to function adequately to perform many basic activities associates with work. In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of disabling pain.

(Tr. 23-24.)

---

[4] The Court notes that this paragraph in the ALJ's decision contained multiple spelling errors, which the Court has corrected.

While Castillo argues that she was neither capable of the lifting/carrying requirements of light work nor capable of prolonged standing and walking requirement of light work, it is clear from the above evidence that substantial evidence supports the ALJ's RFC determination. The ALJ specifically reviewed Castillo's testimony as well as other medical evidence, including the SAMC opinions that specifically found Castillo could perform light work, and added postural and manipulative limitations into the RFC determination to account for Castillo's claimed postural and manipulative limitations. The ALJ properly discussed the evidence in the record in making the RFC determination, explained the reasoning for the RFC determination, and exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into the RFC assessment that were most supported by the record. *See, e.g., Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991). Consequently, the ALJ did not err in his RFC determination and remand is not required.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

## **NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28

U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **July 1, 2016**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED June 17, 2016.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv